STATE OF NORTH CAROLINA v. BILLY KEITH FOWLER
No. 6815SC318

(Filed 13 November 1968)

**1. Criminal Law § 84—   evidence illegally obtained**
    Evidence obtained without a search warrant under conditions requiring a warrant is incompetent as evidence in the trial of any action. G.S. 15-27, G.S. 15-27.1.

**2. Criminal Law § 84—   objection to evidence gained by search — burden on the State**
    Where defendant objects to the introduction of evidence obtained under conditions requiring a search warrant, the State must produce the warrant or introduce evidence to show that it has been lost and to show its contents and regularity, unless production of the warrant is waived by the accused, notwithstanding the search was precipitated by a crime other than the one for which defendant is presently on trial.

**3. Criminal Law § 84—   motion to suppress evidence gained by search — procedure**
    The procedure upon motion to suppress evidence because of an illegal search and seizure is the same as the inquiry by the court into the voluntariness of an alleged confession.

**4. Criminal Law § 84— objection to evidence gained by search — voir dire hearing**

Where defendant interposes a general or specific objection to the admission of evidence obtained by a search and seizure, the trial judge must determine the legality of the search by a preliminary inquiry in the absence of the jury.

APPEAL by defendant from *Bailey, J.,* 22 April 1968 Criminal Term, ORANGE Superior Court.

Defendant was charged with breaking and entering and larceny from the F & F Super Market, Inc. Several items were taken including 210 cartons of cigarettes. These items were valued at $442. At the trial, the defendant, represented by counsel, entered a plea of not guilty to both charges and was tried by a jury. Victor Sharpe, who testified for the State, stated that he was the manager of the F & F Super Market; that when he went to the store on 15 July 1967, he discovered that the store had been entered and that the total value of the property missing was above $400.

Larry Eugene Langley and William Thomas Rudd also testified as witnesses for the State. They testified that they were accomplices in the break-in and that Billy Keith Fowler, the defendant, was present and took part in the crime.

Officer Coy Donovan, a detective with the Burlington Police Department, testified that he interviewed William Thomas Rudd who told him about his participation in the break-in, and also that of Gene Langley and Billy Keith Fowler. Officer Thomas Long of the Burlington Police Department testified that he assisted the Alamance Sheriff's Department in serving a search warrant, and that upon searching the residence of the defendant, they found cigarettes with an F & F Super Market label on them.

The defendant offered Jerry Fowler, his brother, as a witness in his behalf. He testified as a character witness for the defendant. Brenda Fowler, the wife of the defendant, testified that she was married to the defendant in 1966; that she was living with him on 14 July 1967, the night of the robbery, and that the defendant stayed with her the entire night.

The defendant appeals from a verdict of guilty on both charges.

*Haywood, Denny & Miller by Emery B. Denny, Jr., for defendant appellant.*

*Attorney General T. Wade Bruton by Assistant Attorney General William W. Melvin and Staff Attorney T. Buie Costen for the State.*

MORRIS, J.

By his first assignment of error the defendant contends that the trial court erred when it allowed testimony concerning certain evidence obtained by a search of his house. At the time this testimony was given by Officer Long, the State had not produced a search warrant. The defendant entered a general objection to the questions asked by the State, and this objection was overruled by the trial court. The assignment of error is based on the following series of questions asked by Detective Long:

"Q.   What, if anything, did you find in the house?

DEFENDANT OBJECTS      OVERRULED      EXCEPTION No. 1

A.   In the back bedroom we found several cases of food blenders and ice grinders and mixers in one of the kitchen cabinets.

> THE COURT:   I believe I will exclude that part of the evidence that has nothing to do with this case. Ladies and Gentlemen of the jury, the only thing involved in this case is cigarettes, hams, knives. Disregard the officer's testimony about food blenders and other things, mentioned by the witness.

Q.   Did you find any cigarettes?

A.   Yes, sir, I did.

Q.   I show you this carton marked for identification as State's Ex. 1 and ask you if you can recognize it?

A.   Yes, sir.

Q.   Did you find it at the Billy Keith Fowler house at the time you are testifying about?

DEFENDANT OBJECTS      OVERRULED      EXCEPTION No. 2

A.   Yes, sir."

[1]   North Carolina General Statute 15-27 provides that evidence obtained without a warrant under conditions requiring a warrant shall not be competent as evidence in the trial of any action. G.S. 15-27.1 provides that this statute applies to all search warrants issued for any purpose. "No facts discovered or evidence obtained by reason of the issuance of an illegal search warrant or without a legal search warrant in the course of any search, made under the conditions requiring a search warrant, shall be competent as evidence in the trial of any action."

[2]   The decisions of our Supreme Court establish the principle

that when a search is made under conditions requiring the issuance of a warrant, the State must lay a foundation for the evidence obtained from the search by producing the search warrant unless production of the warrant is waived by the accused. In *State v. Mc-Milliam,* 243 N.C. 771, 92 S.E. 2d 202, the defendant moved to have certain evidence suppressed for the reason that it was obtained by an unlawful search warrant, or without a warrant. The State did not produce a warrant at the trial. The Court stated:

> "Where the search is made under conditions requiring the issuance of a search warrant, and it is attempted, over objection, to justify the search and seizure by the possession of a valid search warrant in the hands of the searchers, the State must produce the search warrant, or, if it has been lost, the State must prove such fact and then introduce evidence to show its contents and regularity on its face, unless production of the warrant is waived by the accused. To render admissible evidence obtained by a search made under conditions requiring the issuance of a search warrant, this legal foundation must be laid."

The following is quoted from the Supreme Court of Appeals of West Virginia:

> "If, when a search warrant and affidavit are at hand, but are not produced, it can be presumed that there is a valid and lawful search warrant, there would be little necessity in preserving such papers; all that would be necessary for the officers to say in justification of their search would be that they had a search warrant issued by a justice of the peace. Such holding would be an open door for all kinds of abuses, and the constitutional guarantee would be of little practical value in the protection of the home and person from unreasonable searches and seizures." *State v. Slat,* 98 W. Va. 448, 127 S.E. 191.

The Supreme Court concluded that it was prejudicial error to allow the evidence over the defendant's objection for the reason that the State had not produced a search warrant.

In *State v. Cobb,* 250 N.C. 234, 108 S.E. 2d 237, the Court in a *per curiam* opinion held that prejudicial error was committed when evidence obtained by a search of the defendant's premises, under circumstances requiring the issuance of a warrant, was introduced over the objection of the defendant and where no search warrant was produced by the State.

The State contends that the present case is distinguishable from *State v. McMilliam, supra,* and *State v. Cobb, supra,* for two rea-

sons. First, in these cases, the search originated from the crimes for which the defendant was being tried, and the evidence obtained related to the crime which precipitated the search. The State argues that since, in the present case, the search was precipitated by another unrelated crime and the evidence obtained did not relate to that crime, but to the crime in the present case, production of the search warrant is not necessary. To follow this argument would certainly weaken search and seizure laws as we know them today. The police officers would only have to say that when this evidence was found, they were not searching for evidence for this crime, but for another crime; and, because the warrant related to another crime, it need not be produced at this trial. We do not feel that production of the warrant should be excused because the search warrant was obtained in relation to a crime other than the one for which the defendant is presently on trial.

Second, the State contends that the present case is distinguishable from the *Cobb* case and the *McMilliam* case because there the defendants moved to suppress the evidence and specified the grounds for such a motion; however, here the defendant, Fowler, only made a general objection. In the recent case of *State v. Vickers,* 274 N.C. 311, 163 S.E. 2d 481, the State introduced certain inculpatory statements allegedly made by the defendant. The defendant entered a general objection. The trial court overruled this objection and allowed the evidence without further inquiry. In reversing the conviction, the Supreme Court said:

"For more than one hundred years this Court has recognized that 'it is the duty of the judge to decide the facts upon which depends the admissibility of testimony; he cannot put upon others the decision of a matter, whether of law or of fact, which he himself is bound to make.' *State v. Andrew,* 61 N.C. 205. The requirement now recognized in North Carolina that there should be a preliminary investigation in the absence of the jury to determine the voluntariness of confessions is demanded because of the conclusive nature of a confession. A trial jury's deliberations should not be infected by forcing a defendant to fight out his objection as to admissibility of an alleged confession in the presence of the jury. Even though the trial court might, after a hearing in the presence of the jury, rule out the confession as being involuntary and instruct the jury not to consider it in determining the innocence or guilt of a defendant, yet it must, in most cases, be prejudicial against the defendant."

The Court concluded:

"We hold that hereafter when the State offers a confession in a criminal trial and the defendant objects, the trial judge shall determine the voluntariness of the admissions or confession by a preliminary inquiry in the absence of the jury."

[3, 4] Our Supreme Court has held that the procedure to suppress evidence because of an illegal search and seizure should be the same as the inquiry by the court into the voluntariness of an alleged confession. *State v. Pike*, 273 N.C. 102, 159 S.E. 2d 334; *State v. Myers*, 266 N.C. 581, 146 S.E. 2d 674. We deem this to be sound reasoning for that in a case where the defendant objects to the admissibility of evidence because of an illegal search or the non-production of a warrant, as in the case where the defendant contends that the confession was obtained by involuntary means, the jury's deliberations should not be infected by forcing a defendant to fight out his objection as to the admissibility of the evidence in the presence of the jury. We hold that when the defendant objects to evidence obtained by a search which requires a search warrant, the court should determine the legality of the search by a preliminary inquiry in the absence of the jury, and that, as in *State v. Vickers, supra*, and *State v. James Joseph Edwards*, 274 N.C. 431, 163 S.E. 2d 727, the general objection is sufficient.

We do not discuss the other assignments of error raised by the defendant as they are not likely to occur again. For the above reasons, there must be a

New trial.

MALLARD, C.J., and CAMPBELL, J., concur.